## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHAI THAO,                                    :        No. 3:26cv608
        Petitioner                        :
                                         :        **(Judge Munley)**
   v.                                         :        FILED
                                         :        SCRANTON
ANGELA HOOVER, Warden, Clinton :
County Correctional Facility,                :        MAY 18 2026
         Respondent                      :        PER _____ *Cal*_____
                                                    DEPUTY CLERK

## MEMORANDUM

Before the court is Petitioner Chai Thao's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Thao seeks release from immigration detention as the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") attempts to remove him to countries not originally designated on his final order of removal. The core question presented by this petition is whether 8 U.S.C. § 1226(c) or § 1231(a)(6) applies to Thao's present detention. Furthermore, the key issue for the court to resolve is whether the reopening of Thao's administrative proceedings with respect to third country removal vacated a final removal order with respect to the original country designated. For the reasons set forth below, the court holds that the original removal order was not vacated. Thao's petition will thus be granted in part, and he will be released on supervision.

## Background

Thao is ethnically Hmong and his family is originally from Laos. (Doc. 1-5, Pet. Decl. ¶ 1). Thao's grandfather fought for the Hmong resistance against the communist government in Laos. Id. ¶ 6. In approximately 1980, before he was born, Thao's family fled to Ban Vinai Refugee Camp in Thailand. Id. ¶ 7.

Thao was born in a refugee camp approximately 41 years ago. Id. He spent his first twenty years of life in a camp. (Doc. 5-3, I-589 App. at ECF p. 6). He only speaks Hmong. (Doc. 1-5, Pet. Decl. ¶ 2).

Thao, his wife, and their two children were admitted to the United States in 2005 as refugees. Id. ¶ 9. They settled in Wausau, Wisconsin. Id. The petitioner has four other children, all born in Wausau. Id. ¶ 11. Thao worked as a butcher at a grocery store. Id. ¶ 10. He became a lawful permanent resident in 2007. (Doc. 1-6, Notice to Appear).

According to Thao, his coworkers at the grocery store introduced him to methamphetamine. (Doc. 1-5, Pet. Decl. ¶¶ 12–13). He began using and selling to support his addiction. Id. ¶ 14. The petitioner is a convicted drug dealer. He has multiple state and federal convictions for distributing methamphetamine. (Doc. 1, Pet. ¶ 29). He spent years in state and federal prisons. Id.

Removal proceedings began while Thao was still in the custody of the Federal Bureau of Prisons. Id. ¶ 30. On September 13, 2024, an immigration

2

judge ("IJ") determined that petitioner was deportable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) and (a)(2)(B)(i) due to his multiple criminal convictions, including his convictions related to controlled substances. (Doc. 1-2). The IJ ordered petitioner removed to Laos, but deferred removal under the Convention Against Torture. Id. Both Thao and DHS waived appeal of this order. Id. At no point during the proceedings did DHS designate a third-country or indicate that it intended to remove Thao to any country besides Laos.

Thao completed his criminal sentence on May 23, 2025. (Doc. 1, Pet. ¶ 34). ICE took him into custody thereafter. Id. Five days later, DHS served Thao with three separate notices of removal, stating its intent to remove him to El Salvador, Mexico, and Rwanda, countries that were not contemplated in the removal order. (Doc. 1-3).

At the present time, Thao is contesting removal to these third countries in administrative proceedings. Thao filed a motion to reopen in immigration court. Although initially denied, an IJ granted reconsideration on November 18, 2025. (Doc. 1-4). After removal proceedings were reopened, on April 1, 2026, an IJ ordered Thao removed to Mexico or, in the alternative, to El Salvador or Rwanda. (Doc. 5-5). The IJ denied deferral of removal under the Convention Against

3

Torture regarding these other countries. Id.  Thao has appealed this determination to the Board of Immigration Appeals ("BIA").[1]

Thao asserts that he was detained under 8 U.S.C. § 1231(a) for 179 days, one day shy of the six-month mark delineated for due process purposes in Zadvydas v. Davis, 533 U.S. 678 (2001).  Based on the reopening of removal proceedings, he asserts that he is now detained under 8 U.S.C. § 1226(c) and entitled to release on his own recognizance due to his detention becoming unconstitutionally prolonged.  In the alternative, Thao requests a constitutionally adequate bond hearing.

The government counters that the court lacks jurisdiction over this case.  In the alternative, the government argues that Thao is a member of the certified class in D.V.D. v. U.S. Dep't of Homeland Sec. No. CV 25-10676-BEM, --- F. Supp. 3d ----, 2026 WL 521557 (D. Mass. Feb. 25, 2026), app. filed, No. 26-1212 (1st Cir. Mar. 23, 2025), and that this case should be dismissed or stayed.  In the second alternative, the government argues that Thao's detention has not become unreasonable. The government advances the view that 8 U.S.C. § 1231(a)(6) still applies to Thao's detention.

---

[1] This information was derived on May 8, 2026 from the Department of Justice's Executive Office for Immigration Review website (https://acis.eoir.justice.gov/en/) by inputting Thao's A-number and nationality. Thao's asylum application asserts that he fears torture in Mexico, El Salvador, and Rwanda.

**Jurisdiction**

The government's primary challenge to Thao's petition is jurisdictional in nature. Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Respondents assert, however, that 8 U.S.C. § 1252(b)(9) and (g) strip this court of jurisdiction. The court disagrees.

Pursuant to Section 1252(b)(9):

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision … to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

Under this section of the Immigration and Nationality Act, "a petition for review filed with an appropriate court of appeals…shall be the sole and exclusive means for judicial review of an order of removal[.]" 8 U.S.C. § 1252(a)(5)

Section 1252(b)(9) has been referred to as a "zipper clause," Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 483 (1999) ("AADC"), which channels removal claims into a single petition for review, E.O.H.C. v. Sec'y

5

United States Dep't of Homeland Sec., 950 F.3d 177, 186 (3d Cir. 2020).  That is, "Congress intended the zipper clause to 'consolidate judicial review of immigration proceedings into one action in the court of appeals.' " Guerrero-Lasprilla v. Barr, 589 U.S. 221, 230 (2020) (quoting INS v. St. Cyr, 533 U.S. 280, 313 (2001)).

Despite the wording of the statute, Section 1252(b)(9) does not bar all habeas petitions.  As the Supreme Court has explained, Section 1252(b)(9) " 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision ... to seek removal,' or 'the process by which ... removability will be determined." ' Dep't of Homeland Sec. v. Regents of the Univ. of California, 519 U.S. 1, 19 (2020) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294–95 (2018) (Alito, J., plurality op.), 355 (Breyer, J., dissenting) ("Jurisdiction also is unaffected by 8 U.S.C. § 1252(b)(9), which by its terms applies only with respect to review of an order of removal under Section 1252(a)(1).") (cleaned up).

Here, Thao is not challenging any aspect of a removal order or any decision during the reopened removal proceedings before the IJ or the BIA.  The petitioner asserts that his right to due process is being violated from his continued detention while the third-country removal process is adjudicated. Section 1252(b)(9) simply does not apply.

6

The court reaches the same result with respect to 8 U.S.C. § 1252(g), another jurisdiction-stripping provision.  That subsection provides:

> Except as provided in this section and notwithstanding any other provisions of law ... no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

Here, the court's jurisdiction is not barred by Section 1252(g) since Thao's claim does not challenge the commencement of removal proceedings, the Attorney General's decision to adjudicate, or the execution of a removal order. See AADC, 525 U.S. at 482 (finding that Section 1252(g)(2) divests the court of jurisdiction "only to [these] three discrete actions").

The court thus returns to Section 2241(c)(3).  Thao filed the instant petition while detained at a jail in Clinton County, Pennsylvania within the Middle District of Pennsylvania.  The petitioner asserts that his continued detention violates his right to due process.  Based on the government's response and Thao's traverse, he also asserts that the wrong provision of the INA is being used to justify his detention.  Consequently, the court has habeas jurisdiction over the petition. Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004); see also Zadvydas, 533 U.S. at 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period

7

detention."); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 208 (3d Cir. 2020) (finding that the district court had federal question jurisdiction and habeas jurisdiction under Section 2241 to hear a challenge to prolonged detention pursuant to 8 U.S.C. § 1226(c)).

**Analysis**

### 1. The D.V.D. Dismissal or Stay Argument

With the jurisdictional issue resolved, the respondents alternatively request dismissal or a stay because, per their position, Thao is a class member certified in D.V.D. This argument lacks any substantive application to this case.

In short, D.V.D. is a class action matter involving notice and an opportunity to be heard before the government attempts to remove noncitizens to third-countries not designated on their order of removal. See 2026 WL 521557. And while Thao is critical of the process he received between May 2025 and November 2025 regarding the government's efforts to remove a Hmong-speaking refugee with drug convictions to Central America or Africa, that criticism is not why he filed the habeas petition. Rather, all evidence indicates that Thao ultimately received notice *and* a hearing before an IJ *and* an opportunity to appeal *and* if necessary, the ability to file a petition for review with the appropriate Circuit Court of Appeals. To the extent that Thao was, is, or will be a member of the D.V.D. class, he has essentially been awarded the relief that is

8

being reviewed by the First Circuit Court of Appeals at the present time. Id. at *44 (declaring that class members have the right to meaningful notice before removal to any third country and have the right to a meaningful opportunity to raise a country-specific claim against removal before removal to any third country).

## 2. Thao's Detention Has Become Unconstitutionally Prolonged

The court now reaches Thao's primary argument that his continued detention violates his right to due process of law. As an initial matter, there is a dispute between Thao and the government regarding which provision of the Immigration and Nationality Act applies to his detention. Thao contends that 8 U.S.C. § 1226(c) applies. Respondents assert that 8 U.S.C. § 1231(a)(6) applies.

### a. The Parties' Positions

Thao argues that the final order of removal order was vacated when his motion for reconsideration was granted. In conjunction with that argument, Thao's reply analyzes the German Santos factors as if removal proceedings have started anew and Section 1226(c) applies to his detention. (Doc. 5 at 8–11).

On the other hand, the government takes the position that the reopening of removal proceedings does not negate the underlying removal order but was "instead for the purpose of examining whether [p]etitioner has a reasonable fear of persecution if removed to a third country." (Doc. 4, Resp. at 19). The

9

government thus analyzes Thao's claim as one pursuant to Section 1231(a)(6) and Zadvydas.

The relief afforded by German Santos is a bond hearing "to gauge whether [petitioner] still needs to be detained to keep him from fleeing or committing more crimes." 965 F.3d at 213. The relief afforded by Zadvydas is conditional release if the government cannot rebut a showing that removal will not occur in the reasonably foreseeable future. 533 U.S. at 701. The parties' respective positions appear to be contrary to their interests.

### b. Whether Reopening of Removal Proceedings Vacates the Prior Removal Order in this Case

Notwithstanding such puzzling positions, when a noncitizen is charged with being removable from the United States, an IJ conducts a hearing, receives and considers evidence, and determines whether the noncitizen is removable. Nken v. Holder, 556 U.S. 418, 439 (2009) (Alito, J. dissenting) (citing 8 U.S.C. § 1229a(a); 8 CFR §§ 1240.1(a)(1)(i), (c) (2008)). "After the removal order is final and enforceable, the alien may file a motion to reopen before the IJ, see 8 U.S.C. § 1229a(c)(7), or a petition for review before the appropriate court of appeals, see § 1252(a)(1)." Id. By statute, motions to reopen address "new facts" that a petitioner asserts "will be proven at a hearing." 8 U.S.C. § 1229a(c)(7)(B).

On September 13, 2024, an IJ determined that Thao was removable to Laos, but deferred removal under the Convention Against Torture. (Doc. 1-2).

10

Neither Thao nor DHS appealed.  That order became final.  On May 30, 2025, upon Thao's release from federal criminal custody, ICE served the petitioner with notices of removal to El Salvador, Mexico, and Rwanda. (Doc. 1-3).  On November 18, 2025, an IJ reconsidered its order not to reopen proceedings. (Doc. 1-4).  The grant of reconsideration means that Thao's proceedings were reopened.

The key question here is whether reopening of proceedings vacated any removal order issued in earlier proceedings.  No precedential opinion of the Supreme Court of the United States or the Third Circuit Court of Appeals governs this determination.

Moreover, "[t]here is some disagreement among the circuits as to whether the filing of a motion to reopen is itself part of the underlying immigration proceedings or more appropriately characterized as the commencement of a new proceeding altogether." Bronisz v. Ashcroft, 378 F.3d 632, 636 (7th Cir. 2004).  In Bronisz, the Seventh Circuit adopted a rule that when a motion to reopen is granted in the immigration context, it is akin to a district court granting a motion under Federal Rule of Civil Procedure 60(b), which, in effect, vacates the previous judgment of the case. Id. at 637.  By its analysis, the Seventh Circuit joined the Second, Fourth, and Tenth Circuits in so holding. Id. at 636 (citing Aguilera v. Kirkpatrick, 241 F.3d 1286, 1290 n. 2 (10th Cir. 2001); Stewart v. INS,

181 F.3d 587, 593 (4th Cir. 1999); Vargas v. INS, 938 F.2d 358, 362 (2d Cir. 1991)). Per Bronisz, a decision of the First Circuit was the outlier. Id. (citing Wright v. Ouellette, 171 F.3d 8, 12 (1st Cir. 1999) (holding that motions to reopen are more akin to starting a new proceeding)).

In his reply brief, Thao points to an "understanding" in this circuit that "the grant of a motion to reopen vacates the previous order of deportation or removal and reinstates the previously terminated immigration proceedings." (Doc. 5 at 4) (citing Mebuin v. Att'y Gen., 570 F. App'x 161, 162 (3d Cir. 2014)). In Mebuin the Third Circuit dismissed a petition for review for lack of jurisdiction because the BIA had granted a motion to reopen due to an ineffective assistance of counsel claim. Id. In so holding, the Mebuin court referred to Bronisz. Id. Thao argues as if Mebuin conclusively adopted a rule that motions to reopen vacate underlying removal orders and reinstate previously terminated immigration proceedings.

The court disagrees. Mebuin is a non-precedential decision that is procedurally and factually dissimilar. That is, in Mebuin, the Third Circuit analyzed whether it had jurisdiction to hear an administrative appeal, not which provision of the INA applied to a habeas petitioner's detention following the reopening of removal proceedings. Mebuin itself is not persuasive. And Thao points to no other case where the Third Circuit has conclusively adopted the Bronisz rule in a precedential opinion with similar facts.

12

Returning to the statute, motions to reopen address "new facts." 8 U.S.C. § 1229a(c)(7)(B).  This dispute can be resolved by determining whether "new facts" are about the prior determination or about a new determination.  Here, the "new facts" presented by Thao in the underlying removal proceedings have nothing to do with the removal order to Laos or deferral of removal to that country under the Convention Against Torture.  Rather, Thao's "new facts" deal with third countries: Mexico, El Salvador, and Rwanda.  Thus, Thao's case involves a reopening of administrative proceedings, but it does not involve the reopening of the record with respect to the Laos removal order.

That distinction is manifest in the factual record.  Thao's motion to reopen addressed his lack of opportunity to present a fear-based claim to authorities regarding Mexico, El Salvador, and Rwanda. (Doc. 5-2).  In his motion to reopen, he explicitly argued: "because the basis for reopening is new and previously unavailable evidence of DHS's intention to deport…to a nondesignated country…this motion is excused from the statutory and regulatory reopening standards and filing requirements." Id. at 5–6.  In requesting reopening, Thao did not seek to vacate his Laos removal order, but to stay removal and allow for him to seek protection from Mexico, El Salvador, and Rwanda. Id.

The IJ's recent order upon reopening also reflects the distinction.  The order provides:

13

RESPONDENT WAS PREVIOUSLY GRANTED DCAT FROM LAOS. RESPONDENT TODAY WAS SEEKING DCAT FROM MEXICO, EL SALVADOR AND RWANDA WHICH WAS DENIED.

(Doc. 5-5 at 2). [2]

Thao has an administratively final order with respect to Laos. That order was not vacated when administrative proceedings were reopened to address removal to different countries. His motion to reopen sought a new adjudication. It is, for all intents and purposes, a new case.

Consequently, based on the original final removal order with respect to Laos, 8 U.S.C. § 1231(a) applies to Thao. The Laos removal order covers the entire period of his immigration detention to date.

### c. The Zadvydas Framework Compels Release

When a noncitizen is ordered removed, the government shall remove that person from the United States within a period of 90 days, the removal period. 8 U.S.C. § 1231(a)(1)(A). Section 1231 contains statutory provisions defining when the removal period begins. Id., § 1231(a)(1)(B). The removal period begins on the latest of the following dates:

> (i) The date the order of removal becomes administratively final[;] (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[;] or (iii) If the alien is detained or

---

[2] "DCAT" refers to deferral of removal under the Convention Against Torture.

14

confined (except under an immigration process), the date
the alien is released from detention or confinement.

Id. During the removal period, the individual subject to the removal order shall be detained. Id., § 1231(a)(2)(A).

Only Section 1231(a)(1)(B)(iii) is applicable to the petitioner.  That is, Thao's removal period began on the date he was released from federal prison on May 23, 2025.  The Section 1231(a)(1)(A) removal period in this case ended on August 21, 2025.

"After that 90-day period, aliens ordered removed as inadmissible under 8 U.S.C. § 1182, like petitioner may be detained beyond the removal period or released under supervision." Munoz-Saucedo v. Pittman, 789 F. Supp. 3d 387, 395 (D.N.J. 2025) (quoting 8 U.S.C. § 1231(a)(6); Zadvydas, 533 U.S. at 683) (cleaned up).  Section 1231(a)(6) does not expressly specify how long detention past the 90-day removal period may continue. Johnson v. Arteaga-Martinez, 596 U.S. 573, 579 (2022).

In Zadvydas, the Supreme Court construed 8 U.S.C. § 1231(a)(6) to permit detention "only for a period reasonably necessary to secure removal," and recognized a "presumptively reasonable" six-month detention period. [3] 533 U.S.

---

[3] The statute's use of "may" suggests discretion, not necessarily unlimited discretion; it is thus ambiguous. Clark v. Martinez, 543 U.S. 371, 377 (2005) (quoting Zadvydas, 533 U.S. at 697, 689, 699).  Based on that perceived ambiguity and the serious constitutional threat posed by indefinite detention of noncitizens, the United States Supreme Court interpreted Section

at 699, 701.  After six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." Id. at 701.

In this case, the six-month mark passed on November 19, 2025.  Under the relevant framework, petitioner has established "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.  He has a final order withholding his removal to Laos. He has an order of removal to Mexico (or El Salvador or Rwanda) freshly appealed to the BIA earlier this month.  It may take months or even years for the Mexico removal order to be finalized.  As of today, Thao has been detained under a final removal order for 355 days.

"Zadvydas does not delineate the boundaries of evidentiary sufficiency, but it suggests that an inversely proportional relationship is at play: the longer an alien is detained, the less he must put forward to obtain relief." Alexander v. Att'y Gen. U.S., 495 F. App'x 274, 276–77 (3d Cir. 2012).  The government, despite arguing that Section 1231(a)(6) governs Thao's detention, did not supply

---

1231(a)(6) to permit only detention that is related to the statute's basic purpose of effectuating removal See id. (quoting Zadvydas, 533 U.S. at 699); see also Johnson, 596 U.S. at 579 (discussing Zadvydas).

16

anything other than a conclusory argument that there is a significant likelihood of his removal in the reasonably foreseeable future. (Doc. 4, Resp. at 20–21). That is insufficient to rebut Thao's evidence. Removal is not reasonably foreseeable given Thao's appeal of the Mexico removal order to the BIA and the potential to then appeal to the appropriate Circuit Court.

Therefore, because the evidence does not demonstrate a significant likelihood that Thao will be removed to Laos, Mexico, El Salvador, or Rwanda in the reasonably foreseeable future, he will be ordered released from confinement at the Clinton County Correctional Facility. The Zadvydas framework dictates this outcome. 533 U.S. at 699–700 ("if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.")

Nonetheless, Thao's release from custody will be subject to conditions. Id. at 700 ("the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances[.]) The statute, 8 U.S.C. 1231(a)(3), authorizes supervision under promulgated regulations, 8 C.F.R. § 241.5. Thao "may no doubt be returned to custody upon a violation of those conditions." Zadvydas, 533 U.S. at 700 (citations omitted).

Furthermore, as indicated above, Thao has been convicted at the state and federal level for dealing methamphetamine. Thao's criminal record also includes

17

convictions for jumping bail.  According to the court's review, however, the incarceration components of his criminal sentences are now over.  He is now subject to periods of supervised release in his criminal cases — 4 years on the federal charges and 6 years on the state charges.   To the extent that there is any concern that "illegal, inadmissible aliens will be released notwithstanding their criminal history and obvious flight risk" as the result of the <u>Zadvydas</u> framework, 533 U.S. at 717 (Scalia, J., dissenting), federal *and* state authorities will be supervising the petitioner's release in this case.  Ostensibly, Thao will have to report to ICE, United States Probation, and to a state probation office in Wisconsin at frequent and regular intervals.

**Conclusion**

For the reasons set forth above, 8 U.S.C. § 1231(a)(6) applies to Thao's detention and his detention has become unreasonable.  His petition for writ of habeas corpus will be granted, and he will be released on conditions.  An appropriate order follows.

Date: 5/18/26

JUDGE JULIA K. MUNLEY
United States District Court

18